OPINION
{¶ 1} Defendant-Appellant, Chestine Adkins, appeals two judgments of the Union County Court of Common Pleas, convicting her of one charge of harassment by an inmate and one charge of assault and sentencing her to six months of incarceration on each charge, to be served consecutively to each other and to her current prison term. On appeal, Adkins claims that the introduction of prejudicial evidence denied her a fair trial, that her trial counsel was ineffective, that her conviction for assault was against the manifest weight of the evidence, and that she was denied due process of law by not receiving a racially diverse jury. After reviewing the entire record, we find no merit in any of Adkins' four assignments of error. Accordingly, the judgments of the trial court are affirmed.
 {¶ 2} In October of 2002, Adkins, while an inmate at the Ohio Reformatory for Women ("the Reformatory"), spit on a corrections officer as she was being escorted back to her cell. Consequently, Adkins was indicted on one count of harassment by an inmate in violation of R.C. 2921.38(A), a felony of the fifth degree.
 {¶ 3} In February of 2003, Adkins was transported from the Reformatory to the Union County Court of Common Pleas for arraignment on the harassment by an inmate charge. After being transferred back to the Reformatory, Adkins physically attacked a corrections officer. Because of the attack, Adkins was indicted on one count of assault in violation of R.C. 2903.13(C)(2)(a), a felony of the fifth degree.
 {¶ 4} In March of 2003, the state filed a motion to consolidate both the harassment by an inmate charge and the assault charge into one trial. The trial court granted this motion, and both cases were brought before the court for a jury trial in September of 2003. The jury returned a verdict of guilty on both charges, and the trial court sentenced Adkins to six months of incarceration on each charge. The trial court ordered the sentences to be served consecutive to each other and consecutive to Adkins' previous prison sentence for which she was already serving time. From these judgments of conviction and sentence Adkins appeals, presenting the following four assignments of error for our review.
 Assignment of Error I The defendant was deprived of a fair trial and due process oflaw because the court allowed prejudicial evidence that shouldnot have properly come before the jury.
 Assignment of Error II The defendant was deprived due process of law because ofineffective assistance of counsel.
 Assignment of Error III The jury verdict that the defendant was guilty of assault wasagainst the manifest weight of the evidence.
 Assignment of Error IV The defendant was deprived of due process of law because shedid not get a racially diverse jury consistent with thepercentage of blacks in the country in violation of thesixth amendment to the U.S. Constitution.
 Assignment of Error I {¶ 5} In her first assignment of error, Adkins contends that the trial court denied her a fair trial by allowing prejudicial evidence to come before the jury. Specifically, she maintains that it was plain error to allow into evidence details of her past felonious assault, the fact that she was currently an inmate, and the decision an internal three panel prison committee made regarding her attacks on the corrections officers. Adkins also claims that it was error for the trial court to not allow her access to the prison guards' employee files.
 {¶ 6} With respect to the admission or exclusion of evidence, a trial court is given broad discretion, and its decision regarding the admission or exclusion of evidence will only be overturned if it has abused that discretion. State v. Snyder,
3rd Dist. No. 8-03-04, 2003-Ohio-5134, at ¶ 10, citing State v.Hawn (2000), 138 Ohio App.3d 449, 457. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 7} At trial, Adkins failed to object to the introduction of any of the evidence she complains of on appeal. Accordingly, our review is limited to plain error. State v. Barnes (2002),94 Ohio St.3d 21, 27.
 {¶ 8} The Ohio Supreme Court has set forth a tripartite test to determine whether plain error is present: 1) there must be an error; 2) the error must be plain, i.e., the error must be an obvious defect; and 3) the error must have infringed upon substantial rights by affecting the outcome of the trial. Id; see, also, State v. Williams, 3rd Dist. No. 1-01-63, 2002-Ohio-3623, at ¶ 41. It is important to remember that the constitution does not guarantee a perfect trial, only a fair one.United States v. Hasting (1983), 461 U.S. 499, 508-509; Statev. Lott (1990), 51 Ohio St.3d 160, 166.
 {¶ 9} The first evidence that Adkins claims was plain error was evidence regarding her past felonious assault charge. She claims that the introduction of evidence concerning her past conviction violates Evid.R. 403 and 404(B).
 {¶ 10} Evid.R. 404(B) states that:
Evidence of other crimes, wrongs, or acts is not admissible toprove the character of a person in order to show that he acted inconformity therewith. It may, however, be admissible for otherpurposes, such as proof of motive, opportunity, intent,preparation, plan, knowledge, identity, or absence of mistake oraccident.
However, even if evidence of prior bad acts is admissible under Evid.R. 404(B), it is still subject to Evid.R. 403, which states that even relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 11} The evidence Adkins complains of came into the record via the testimony of the Reformatory's warden. The warden testified that Adkins had been convicted of felonious assault and was currently an inmate at the reformatory. As part of its burden of proof for both offenses, the state was required to prove that Adkins was an inmate at the time she committed the offense. R.C.2921.38(A); R.C. 2903.13(C)(2)(a). Therefore, the warden's testimony that Adkins was an inmate was not error. However, the testimony relating the details of Adkins' crime was error.
 {¶ 12} Neither R.C. 2921.38(A) nor R.C. 2903.13(C)(2)(a) require the details of a crime to come into the record. While each code section requires the state to prove that the accused was an inmate in a correctional facility at the time of the offense, neither requires the state to prove that the inmate was incarcerated for a particular offense. The warden's testimony that Adkins' was an inmate at the time of the offense was entered for the proper purpose of proving an essential element of the crimes, but there was no proper purpose for which the details of Adkins' offense should have come into the evidence. The prejudicial effect of such evidence outweighed its probative value. Therefore, the introduction of evidence concerning Adkins' prior conviction violated Evid.R. 403.
 {¶ 13} However, we must still analyze whether the brief mention of Adkins' offense constituted plain error. In order to be plain error, the testimony concerning Adkins' prior conviction must have affected the outcome of the trial.
 {¶ 14} Herein, there is overwhelming evidence that Adkins committed the crimes of which she was accused. Several corrections officers testified including the two whom she attacked. One of the corrections officers who had not been attacked testified that Adkins had threatened to "kick her ass" just like she had the other corrections officer. The state also entered into evidence pictures of the injuries the correctional officer suffered as a result of Adkins' assault. Moreover, Adkins admitted to spitting on the one officer and to physically hitting the other officer. Furthermore, because she was claiming self defense in both cases, Adkins took the stand in her own defense. While on the stand, Adkins gave testimony concerning the nature of her prior offense. Finally, the trial judge gave an explicit instruction to the jury not to consider past convictions as evidence that a person would act in accordance with that conviction. Accordingly, because there is overwhelming evidence of Adkins' guilt, because she testified herself concerning the nature of her prior conviction, and because the trial court gave a sufficient limiting instruction, we find that the error which arose because of the warden's testimony did not affect the outcome of the trial and does not constitute plain error.
 {¶ 15} Adkins next argues that it was error for the trial court to allow into evidence the fact that she was currently in prison. According to Adkins, the fact that she was currently in prison at the time of the trial was more prejudicial than probative. The United States Supreme Court has noted that it is a valid trial tactic for a prisoner to use her current status as an inmate in an attempt to elicit sympathy from the jury. Estellev. Williams (1976), 425 U.S. 501, 507-508, 96 S.Ct. 1691. Therefore, the evidence could have had a valid non-prejudicial purpose, and we find that no plain error existed that the trial court should have corrected. Thus, the trial court did not abuse its discretion in allowing this information into evidence.
 {¶ 16} Adkins next contends that the trial court erred by allowing into evidence the findings of an internal prison board concerning her attacks of the corrections officers. A review of the record shows that the trial court did not allow the prosecution to pursue this line of questioning. After only one question regarding the internal board's decision, the trial court cut off the prosecutor and forbid any further questioning along this line.
 {¶ 17} Furthermore, the trial court expressly admonished the jury not to take into consideration any testimony that was stricken from the record or to consider why certain testimony was not allowed into evidence. A jury is presumed to have followed the trial court's instructions. State v. Twyford (2002)94 Ohio St.3d 340, 356, citing State v. Loza (1994), 71 Ohio St.3d 61,75.
 {¶ 18} It is clear from the record that no plain error arose regarding this evidence. In fact, the trial court did exactly what Adkins wanted; it kept the evidence out of the record and away from the jury.
 {¶ 19} Finally, Adkins argues that the trial court erred in not allowing her access to the corrections officers' employee files. Adkins claims that there could be impeachable information concerning past disciplinary actions contained in those files.
 {¶ 20} At trial, Adkins' request to produce the officers' files was denied. However, Adkins was able to thoroughly cross-examine both of the corrections officers that she attacked, numerous other Reformatory and law enforcement personnel, and she called on direct examination several fellow inmates from the Reformatory. Nowhere in any of this testimony was there any evidence of past disciplinary actions against the officers or inappropriate behavior on the part of the officers. Adkins has failed to prove that there was any kind of probative evidence contained within the officers' files and that the denial of such files affected the outcome of her trial. Therefore, Adkins has failed to prove that the denial of this evidence was plain error.
 {¶ 21} After reviewing the entire record before us, we do not find that the trial court abused its discretion and committed plain error in the admission and exclusion of evidence. Accordingly, Adkins' first assignment of error is overruled.
 Assignment of Error II {¶ 22} In her second assignment of error, Adkins asserts that her trial counsel was prejudicially ineffective. She claims that her trial counsel erred by failing to object to the consolidation of the cases and by failing to object to the introduction of evidence concerning her past conviction and current status as an inmate.
 {¶ 23} The Supreme Court has developed a two prong test for evaluating ineffective assistance of counsel claims. Stricklandv. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Under the first prong, counsel's performance must be shown to have been deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. The second prong requires a showing that the deficient performance caused the defendant prejudice. Id. Prejudice will be found where there is a reasonable probability that, but for counsel's errors, the results of the trial would have been different. Id. at 694, see, also, State v. Bradley (1989), 42 Ohio St.3d 136, 142-143. Adkins has the burden of proving both prongs of this test. Statev. Lott (1990), 51 Ohio St.3d 160, 175. Thus, she must show that her counsel erred and that, absent such error, the outcome of the trial would have been different. Moreover, Adkins must overcome the presumption that, "the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, quotingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158.
 {¶ 24} Adkins first contends that her defense counsel was ineffective for failing to object to the consolidation of the harassment by an inmate charge and the assault charge. She claims that the two crimes required different defenses and that having them tried together only resulted in prejudice to her. However, Adkins fails to overcome the presumption that her trial counsels' decision was merely strategic.
 {¶ 25} Throughout the trial, Adkins attempted to present evidence to the jury that she had been provoked and had only responded with physical force in retaliation to the corrections officers' use of force. In both instances, Adkins claimed that she was not the instigator. It is very possible that the trial counsel wanted both of these crimes tried before the same jury to expose the jury to more confrontations between Adkins and the corrections officers in order to bolster her claims and make the officers seem more aggressive. The failure to object to the consolidation of the cases could very well have been trial strategy. Therefore, we do not find that this failure to object constituted ineffective assistance of counsel.
 {¶ 26} Adkins also claims that her trial counsel should have objected to the introduction of evidence concerning her past conviction and current status as an inmate. As discussed above, the introduction of evidence concerning Adkins' prior conviction did not affect the outcome of the trial. Accordingly, trial counsel was not ineffective for failing to object.
 {¶ 27} Furthermore, having a prisoner use her status as an inmate to elicit sympathy from a jury is a recognized trial tactic. Estelle v. Williams, 425 U.S. at 507-508. Therefore, Adkins has failed to prove that her trial counsel was prejudicially ineffective, and her second assignment of error is overruled.
 Assignment of Error III {¶ 28} In her third assignment of error, Adkins claims that her conviction for assault was against the manifest weight of the evidence. She contends that the jury clearly lost its way by not finding that she acted in self defense.
 {¶ 29} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 30} At trial, Adkins did not claim that she had not physically attacked the corrections officer. Instead she claimed that she had acted only in self defense. In support of her theory Adkins produced only her own testimony. On the contrary, the state produced the correctional officer who had been attacked and several other correctional employees who heard or witnessed at least part of the attack. The state also produced photographs of the assault victim showing the wounds that Adkins had inflicted.
 {¶ 31} Adkins' claim that the jury clearly lost its way by not believing her version of events is unfounded. There was more than ample proof before the jury to indicate that Adkins had assaulted the guard. While the jury would have been free to believe Adkins and find that her attack was justified self defense, it was also free not to believe her. Accordingly, the jury did not lose its way and create such a manifest miscarriage of justice that its verdict must be overturned, and Adkins' third assignment of error is overruled.
 Assignment of Error IV {¶ 32} In the fourth assignment of error, Adkins asserts that she was deprived due process of law by not receiving a jury that was racially representative of the county she was tried in. She claims that she had the right to a jury that corresponded to the exact racial makeup of Union County.
 {¶ 33} To establish the prima facia case that a defendant's right to a jury that represents a fair cross-section of the community has been violated, "the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri
(1979), 439 U.S. 357, 364, 99 S.Ct. 664.
 {¶ 34} In her brief Adkins admits that she has no proof that blacks have ever been systematically excluded from the jury selection process in Union County. As such, Adkins fails to meet the prima facia test established by the Supreme Court for alleging a constitutional violation of due process, and her fourth assignment of error is overruled.
 {¶ 35} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Shaw, P.J., and Bryant, J., concur.